Good morning. Thanks, all of you for making the adjustments necessary to allow us to hear this case orally without endangering any of us, too much anyway. Three members of this panel are all in the Jackson, Mississippi courthouse, but separately located in that courthouse to hear these arguments. I want to make note that this is the first oral argument, so do well for one of our members, Corey T. Wilson, who joined the court a few months ago and with all the disruptions is just now having his first set of oral arguments. We welcome him to the court, confident he will continue to be an able member of the court, and his predecessor is actually part of the panel as well. So welcome to Judge Wilson and also welcome to Ms. Grand and Mr. Beck. We have three cases today to hear. The first one is United Mr. Beck. Thank you, Your Honor, and may it please the court. My name is Brandon Beck, and I represent Brian Morton, the appellant here today. Your Honors, there are two reasons why this court should reverse the district court's denial of Mr. Morton's motion to suppress. First, the good faith exception does not apply. Second, the warrant is unsupported by probable cause. To my first point, Your Honors, in United States v. Leon in 1984, U.S. Supreme Court described four situations in which the good faith exception does not apply. First, if the magistrate was misled. Second, if the magistrate wholly abandoned his or her judicial role. Third, if the affidavit lacked indicia of probable cause. And fourth, if the warrant lacked particularity. Here, two of those situations are present. A misled magistrate in a bare bones affidavit. So first, to the misled magistrate. In United States v. Gentry, this court in 2019, described this situation as occurring when a magistrate is, quote, misled by information in an affidavit that the affiant knew was false or would have known except for a reckless disregard for the truth. In fact, it seems to me that your general point is that this was pretextual. They really were after whatever evidence of his obsessions were sexually. But we do have the case law that says we're not to look at subjective intent. What do you say to the argument that while that's really relevant here is, is this affidavit honest insofar as the facts are alleged? And is it sufficient to support probable cause? Is that not the only issue set of issues for us? I don't think it's the only set of issues, but I think this is an incredibly important point. So I thank you for the question. I think there's a good deal of disagreement as to what role subjectivity plays in this case. And I think that it does play a role. So when the district court denied the motion to suppress and made the statement that subjectivity is irrelevant, the district court cited the case United States versus Causey before this court, also cited by the government. When you read United States versus Causey, what this court was doing is rejecting the subjective intent exclusionary rule. We are not relying on a subjective intent exclusionary rule. In other words, we're not saying the evidence needs to be suppressed because the officers intended to do something intended to mislead. We're simply saying the good faith exception does not apply because the officers intended to mislead. And when you look at the series of cases at the Supreme Court on good faith exception, starting with Leon and then Herring versus United States and then Arizona versus Evans, the first two of those are in brief. What the court is looking at is saying, okay, good faith is an objective reasonableness test. If an officer objectively relies on a warrant and just does their job, there's no purpose for exclusion because it doesn't deter police misconduct. But if you look at the limiting principles and all of those cases, the court is then asking the question, but if there's evidence that the police officers are up to something, if they're trying to game the system in some way, then certainly we would not apply the good faith exception in that case. What's your best case on that point? Herring versus United States, Your Honor. That was the case where the Supreme Court considered a warrant that actually didn't exist, but it only existed because of a clerical error. And the Supreme Court said, okay, if that will look the other way, but if there's any evidence that it was systemic negligence or rose to the level of recklessness or intentionality, certainly we would not apply the good faith exception in that case. When we look at the standard in United States versus Gentry for this first misleading thing, it says information that the affiant knew was false or would have known, except for reckless disregard. So we compare what the affiant knew to what the affiant said in order to determine whether it was misleading. How do you explain or reconcile Wren and its progeny with the argument that you're making? Well, I reconciled my same response to Causey. Wren rejected subjective intent exclusionary rule. So officers are allowed to offenders. They're allowed to mislead offenders, but we're not going to suppress evidence when they do so. But when officers are not acting in good faith, they don't get the protection of the good faith exception. So here, the misleading nature is not why it needs to be suppressed. From your point of view, good faith is purely a subjective matter. Well, I think it's partially subjective. I think subjectivity absolutely plays a role in good faith. Okay, well, what kind of role does it play? Well, is it an overwhelming role or is it just a footnote? Well, it plays a role in this sense. We have to, in the first situation described in Leon, the misleading affidavit, what Gentry says is we have to try to figure out what the officer knew and compare it against what the officer said to see if there was anything misleading about it when you make that comparison. Now, when was that case? Gentry, is that the case you were? 2019. It's the most recent good faith exception case from this court that deals with the misleading affidavit. And there's only one other that I know of, and it's your case, Judge Jolly, United States versus Jarman from 2017. And the way you articulated the standard is a little bit different in order to get at, put some emphasis on the materiality of the reckless or false statement or omission. The way you described it, Judge Jolly, is a knowing or reckless falsehood by omission or commission. That's number one. And then simply asking the question, without the falsehood, would there have been sufficient probable cause? Or if it's an omission, if you include the false in, was there a probable cause? Of course, in both of these. Where is the falsehood now? The falsehood is the omission, right? The police officers were. Excuse me, Mr. Beck, the problem here in Leon itself, one articulation of it is where the issuing judge was misled by information that the affiant knew should have known was false. So you need most misleading and falsity, not misleading by omission of some other additional crime that the officers were seeking. I'm not saying it's an unreasonable argument. I'm trying to find how it fits within the case law that we have to apply. And I think certainly mislead may be one way to look at this, but it's got to be mislead, doesn't it, by something that's false as opposed to something that could have been said further to explain other goals of the search? Yes, Your Honor, I want to answer your question. So Leon didn't deal with that first situation. It first defined that situation. Later cases that dealt with that situation before this court, for example, Jarman and Gentry, both dealt with misleading. And that's when you first see that it can be by a statement or an omission. So it's our counsel. You'll agree. Will you not that there's nothing in the affidavit that's misleading regarding the probable cause to search for drug related evidence? Is that right? That's correct. It's our position. It's not probable cause, but that's correct. But so the admission that you're talking about is really this hunch or the subjective intent of the officers that they thought they might find evidence of child pornography, correct? Well, I would take it one step further than that, Your Honor, in that the record, the facts of this case demonstrate that they were only looking for child pornography. And yet they told the magistrate they were only looking for something different. That's where it becomes misleading. So do you disagree that there was no probable cause to but not the phone? And even if it could reach the phone, it doesn't reach the images on the phone. So I'd like to compare that, for example, to several cases that the government sites, starting with United States versus Gentry. Their officers suspected a person of drug trafficking, and they had a lot of testimony from undercover informants. They had the cell phones. They had all of these things. And when they went to the judge for a warrant, they wanted to look at the cell phones, but they only asked to look at the messages on the cell phones because only the messages would contain that evidence of drug trafficking. When the defendant objected and said that this was a bare bones affidavit because it only relies on the officer's statement about training and experience, similar to what we have here, this court responded and said, not so fast. In fact, described all of these other things in the affidavit, information from undercover informants, from co-conspirators, et cetera, et cetera. We simply don't have that here. In the government's 28J letter, it described a case out of the Fourth Circuit, United States versus Jones, from just this year. There, an officer goes into a person's house, finds a marijuana cigarette. The officer then gets a warrant to search the house. The defendant objected. The court said, of course, officers can make reasonable determinations that perhaps there's other drugs in the house. We agree with that. Officers could have searched the entire vehicle for other drugs, but we have a problem when it starts reaching a phone or a house or something apart from that vehicle. Let me ask you about the phone. You're drawing the line between images and drugs. Would they have text messages? We believe knowledge and experience. Would they have text messages with their buyer, that sort of thing? Do you disagree with having searched those functions of the phone that would allow them to find those messages? Was there probable cause by the affidavit to allow that? I disagree with that, Your Honor, simply because the drugs that were found in the vehicle were quantity of drugs. It's clear that this person enjoyed using marijuana and ecstasy on a personal level. There was no evidence of engaging in drug dealing, drug trafficking, anything like that. In light of the Supreme Court's guidance in Riley versus California, the Supreme Court said these phones are some things we need to take very, very seriously for privacy purposes. Of course, officers could search the vehicle. The officers should never have reached the phone. I simply made the distinction between text messages and images to illustrate the egregious nature of this invasion of privacy that you don't see even in cases such as Gentry, where officers have incredible amount of evidence of drug trafficking. Still, they're not asking to reach the images. Why would you look at the images? We know why in this case, because the child pornography. In fact, every time they held up the phone in Mr. Morton's face and said, we want to search this, they said, we want to find the child porn on this phone. They didn't ever say, we want to find the evidence of drug trafficking on this phone. I thought they said in the affidavit that often drug dealers take pictures of each other and pictures of their crimes that would also be very helpful to an investigation further into this particular case. In my responses, where's the evidence? He's a drug dealer. In fact, we know he has a small amount of marijuana and a pipe that he had used it with. Well, I know, but he had to buy the drugs from somebody. He had to know he could. He had to get the drugs from somewhere. I agree with that. They could have traced that. He has a telephone number or an image on his cell phone indicating where he purchased these drugs that would lend them to the people that actually sold it. It may lend them to the people that were supplying the people that sold him and so on. It seems to me that there was a valid drug related reason to search the phone to determine the source of the drugs that he had. I disagree, particularly as to the images. I would simply ask the question, where does the government wish to draw the line here? Can they go search the home for the other drugs he might have, et cetera, et cetera. There's this line drawing problem here. It gets much more problematic in light of Riley v. California, where a person's phone is their life. The point of Riley, the overarching point is you have to have a really good reason if you're going to do a search of the phone. That's basically the reason that Avera has done it on Fourth Amendment grounds. It searches the private nature of that individual, whether it's in his home or whether it's in his car or wherever it is. The cell phone is somewhat distinctive. It's also more akin to our usual concerns about Fourth Amendment privacy rights. It's an oddity. Your Honor, my concern here is that this court has an opportunity or potentially make precedent that user quantities of drugs could authorize the search of a cell phone in all circumstances, including the images. I believe that goes far in light of Supreme Court precedent. Thank you, Your Honors. All right, Mr. Bick, we'll hear from you again shortly. Ms. Grand? May it please the Court, Amber Grand for the United States. The appellant's claims in this case, the gist of his claims, amount to an unpreserved challenge in which he speculates about the investigating officer's subjective intent. This question was not answered by the district court and it was not answered by the government in the court below. And in doing so, he asks this court to overturn decades of precedent to the contrary. However, the record does show that the officers in this case acted in an objectively reasonable manner, that any reasonably well-trained officer would have conducted themselves exactly as the officers did in this case. And as a result, the suppression determination by the district court should be affirmed. I'd like to begin by emphasizing the fact that this court should review these claims under the plain error standard of review. Mr. Morton made general allegations about pretext in his motion to suppress, but at no time did he claim that Officer Blue made material misrepresentations to mislead the magistrate in order to secure his warrant. There was no evidence presented on these points, there was no Frank's hearing, and as a result, the district court concluded that absent some claim or evidence that Officer Blue exceeded the scope of the warrant, subjective intent was irrelevant. Let me ask you, Ms. Grant, on the briefing or the oral, was there a hearing on this suppression hearing? No, your honor, it was decided Did the briefing cite the case law, more or less, Riley, in particular, that your adversary is talking to us about today? And did he, was the point made that child pornography was really the target of the search? Yes, your honor. He cited United States versus Riley. What is missing is what? He should have called some officers and asked them, I'm not quibbling, I'm not quibbling, I'm not suggesting that's frivolous. What should he have done explicitly beyond what he did, if Mr. Beck handled this in district court? Absolutely. If we're going to be in the business of questioning the officer's subjective motivations and their suspicions of other crimes, then we need to be putting on evidence in a hearing and a Frank's hearing as to what those suspicions were. And we're sitting here on appeal, looking at the record to decide, were they only looking for pornography? Were they looking for drugs and pornography? And I would highlight that the record at page 275, an officer Alawine's report states that they were looking for both. There were dual law enforcement objectives in this case. So if Mr. Morton is going to take the position that this court should be in the business of evaluating their suspicions of any other possible criminal activity before they can conduct a trial, then that's something the district court should have been apprised of. He didn't brief the four exceptions to the good faith exception. The government did, but the initial motion to suppress did not. And he certainly didn't indicate that he was relying on the first exception, the material misrepresentation exception. Instead, he pointed only to the third exception, the bare bones affidavit. And as a result, much like the defendant in United States versus Pope, he challenged the sufficiency of the warrant, of the affidavit, but not the truthfulness of it. And as a result, the district court was never put on notice that it was being asked to decide whether or not Officer Blue was intentionally or recklessly misleading the magistrate in order to go on some hunt, on a search for an offense that was not disclosed in the affidavit or the warrant. Let me ask you how far the government would have been or is, in your view, entitled to go. This is a drug possession case, fairly small quantity. Picking up on Judge Jolly's question, is there authority that would support their entitlement to continue the search into this crime, to find out who his buyer was, to try to shut down whatever network was involved, the conspirators? If you say yes, what's your support for that? Yes, Your Honor. We believe that the Fourth Amendment allows the government to look for the source of those drugs and whether he was continuing to distribute. And I would emphasize that there were 16 ecstasy tablets concealed in the Advil bottle. This wasn't somebody found with a joint in their pocket or with one ecstasy pill. And Mr. Morton pointed to United States versus Jones out of the Fourth Circuit. And I think that's a really great example of the Fourth Amendment allowing a continued search. There, the warrant wasn't even based on locating the joint. That warrant of the home was based on simply the odor of marijuana emanating from the premises. Based on the odor alone, which we also have in this case, officers obtained a warrant to search the house. And the defendant's claim there was, after you found the joint in my kitchen trash can, you had to stop looking. And the Fourth Circuit said- Counsel, that's not quite my question. It's certainly relevant. We have limited time, so let me redirect you just a bit. What I'm talking about is finding the criminal conduct of others. It seems to me the point of Judge, well, it's presumptuous of me, but what I picked up relevant from what was being asked before is, does the government have the right to pursue through searches the seller of a joint of marijuana, who would not enhance the criminal conduct of the person about whom you have evidence, but you're trying to find the criminal conduct of others? Is that something that is permitted, and if so, based on a drug possession, to find who the seller is? What case law do you have to support that? Uh, yes, Your Honor. We believe that that, I want to answer that in two parts. The first part is, we maintain that they were looking for evidence of the defendant's possession and not just looking for evidence of others that might have been involved in the offense. Because there were 16 ecstasy tablets, it's within the realm of reason that he was also redistributing those tablets. That not, it's not one pill in his pocket. So we, for the first part of my answer is, we maintain that this search was to search for evidence of Mr. Morton's possession of drugs. As to your question about whether they're entitled to search for evidence of other people's crimes, I don't have a case off the top of my hand to address that, but I would be happy to find a case. I'm confident that that case exists, and I would be happy to submit a 28J to the court after argument to address that question specifically. But in this case, the record shows at page 275 that the officers wanted to search for Mr. evidence pertaining to his possession of drugs, and they also had these suspicions about child pornography. There is nothing in this court's precedent that bars them from pursuing dual law enforcement objectives. In fact, in United States versus Wilson, which is a case out of this circuit, the defendant made a very similar claim. There, the agents obtained a warrant to search his hotel room on the basis of check fraud and forgery. The defendant claimed that that was a material misrepresentation in the affidavit because they really just wanted to go find evidence of drugs. And this court said, that's not a material misrepresentation. At best, you're claiming that the affidavit was complete, but that's not a material omission because their subjective intent is irrelevant. The cases cited by Mr. Morton where you have a material omission, those pertain to facts. If you fail to disclose that your source, your confidential informant supporting your affidavit has credibility issues, if you fail to disclose that an alleged co-conspirator was in custody during a portion of the offense, if you fail to disclose material facts that have a bearing on probable cause, then you get into trouble with the good faith exception. But there is no case law anywhere holding that subjective intent and suspicions of other criminal activity can amount to a material omission and render an otherwise valid search warrant insufficient and lacking in probable cause. And the Supreme Court has taken this question time and time again, starting with not inadvertent discovery of evidence. In other words, the officers knew full well, when they executed a search warrant for one thing, they were going to find evidence of another thing. Moving to Wren, where you have pretextual traffic stops. And as recently as Ashcroft, where the government was using material witness warrants to detain people that they suspected of criminal activity. And in each and every case, the Supreme Court said in the context of the business of looking at the subjective intent of the investigating officers. In fact, let me let me ask you to expand on your interpretation of Riley. That seems to be a key case for Mr. Beck. How does that fit in in your view? Riley solely addressed whether a warrantless search of a cell phone incident to arrest was proper. And the Supreme Court explicitly said there's no question about what you have to do to search a defendant's cell phone, get a warrant. That was the last line of the opinion in Riley. And that's exactly what we did here. So Riley... It was a lot before the last line. And before that last line, there's certainly a lot of emphasis about how you're exploring a person's entire life by looking into their cell phone, not mine, but a lot of people's cell phone. So it does seem to me there is heightened concern that we need to bring to the court. It does seem to me, unless you're saying otherwise, and please correct me, that whoever drafted this was trying to write for a limited search warrant that would not allow access to everything on the phone. You tried to identify both text messages and photos as being relevant, which I think is probably quite important that you did so, or that the drafter of this did so. And it does seem to me that the key to this case is whether it's proper to search for pictures on this phone as opposed to text messages with whoever his seller, and that's not been supported yet. And we'll let you know if we want you to follow anything further on whether just finding who his seller was is legitimate in this search warrant. So how do you get access to the photographs? If you're going into this person's entire life captured on his camera, on his phone, whatever this thing is, do you say you can look at everything in the phone, or do you acknowledge? I mean, let me just ask you a series of questions. Do you acknowledge, do you say you're entitled to everything inside that phone so long as you can look at anything inside the phone? No, you're not. Or you need probable cause for each individual sort of category of information that could be found there? That's correct. We had to establish, and we did establish a net... Okay, that's fine. That's the yes answer I was looking for. And secondly, what is the basis to allow access to his photos? The affidavit sets out some things. Is that what you're relying on here? That you might find co-conspirators prancing about, showing off their drugs on each other? The nexus here is that based on the officer's 14 years of experience, he expected to find photographs of the narcotics, of money that was changed hand for the narcotics, or as you mentioned, possibly the individual he was obtaining the drugs from. So the photos would further substantiate evidence of the possession. And the search was in fact limited to text messages, call logs, contact lists, and photographs. So this was not a blanket warrant to dig into his emails or other... It was a blanket warrant to look at all his photos, was it not? It did allow access to the photos. Yes, but then the warrant and the affidavit established the nexus, and it simply has to be a substantial basis to conclude that... To give rise to a probability that you'll find evidence there. And so the affidavit here established that evidence might come in the form of pictures of the drugs, pictures of drug proceeds, or pictures of co-conspirators. And the government maintains that that was sufficient to meet the bar that is set for establishing probable cause. May I ask you, are Fifth Amendment concerns implicated in a search where an individual is going to... Where you're going to get information and testimony against him without his having consented to it, or where he would otherwise assert his Fifth Amendment rights? I'm not clear on that issue as it pertains to this case, but I would simply say once you get the warrant to assess the evidence that's in the cell phone, those concerns would be obviated as would concerns with the Fourth Amendment in this case. And make no mistake, there's no allegations that the officers exceeded the scope of the warrant here. In fact, the record shows that they connected the cell phone to the Cellbrite application, and as soon as they came across the went to get the second set of search warrants specifically for child pornography. And that's why the district court said, look, absent an allegation that the officers exceeded the scope, acted objectively unreasonably, subjective intent just doesn't come into play. The Supreme Court in Leon explained in footnote 23 that it would be a grave and fruitless misallocation of judicial resources to start looking at the subjective intent of officers. It would lead to inconsistent results and very improbable outcomes in cases such as this, where you have probable cause to investigate one crime, but suspicions as to another that in fact proved to be true. Let me ask you, where would we be? I know Judge Jolly dissented to this opinion. Where would we be if the Pope opinion was still the law of the circuit? We would be in a very different place than we are today. If the original Pope panel held true, and the subjective beliefs of officers were constituted a material omission, then we would certainly be in a different standing. But twice this court has issued decisions where it attempted to dip its toe in the water of subjective intent, Causey being the other example. And in Causey, you had an en banc revision of that position, which found Supreme Court precedent and Fifth Circuit precedent demands that we look solely to the objective reasonableness of the affidavit and the warrant. And that's why the withdrawal of that opinion was in line with all the precedent that the government has cited. That the sole inquiry here is whether a reasonably well-trained officer would have conducted himself accordingly. And I don't think there could be any real question that they would have in this case. I'm sorry, that they acted as a reasonably well-trained officer would have. The record at 275 shows that they had these duly law enforcement objectives. So they sought advice from their supervisors. They meticulously and carefully established probable cause with details of the possession offense and the specific portions of the phone that they wanted to search for evidence of that offense. And the moment they came across evidence of other criminal activity, they stopped and got the second set of search warrants. I'd like to highlight as well that the Supreme Court has asked us to look at the social cost of suppression. Suppression is not automatic. It has to have a deterrent effect and you have to weigh the social cost. There would be no deterrent effect here where the officers at all times were that as long as their conduct was objectively reasonable, they were entitled to pursue their investigation into the drug possession. Furthermore... It seems to me the social cost here is fairly dramatic. You may be right about it, but the dramatic effect is if somebody has a marijuana cigarette, what's left of it, everything on the cell phone, all the photographs from the cell phone, all the text messages on the cell phone are subject to a search warrant. And I'm not defending how people live their lives, but there's an awful lot that would be found in both of those locations on a lot of people's phones. And so that's what you're asking us to do is to uphold a search of everything on the phone, photograph or text, because somebody had a marijuana cigarette. Is that a fair assessment? It's not just a marijuana cigarette. There were the 16... I don't know where we draw that line. Eight ecstasy tablets, maybe not enough, but 12 is, or 16. It seems to be marijuana cigarette and a few pills. Everything on the phone is fair game. Pictures and text messages. That's basically what you're asking us to hold, is it not? Yes, it is. So long as there's a particularized suspicion and a reasonable basis to conclude that further evidence of that possession offense would be on the phone, then the warrant would be supported. We don't have to get there. That's the probable cause question because we never get past the good faith exception in this case. And the only challenge to the good faith exception that we have here, the only real challenge is this claim of material misrepresentation. And I just want to emphasize that we're reviewing that on plain error. He can't cite a single case to substantiate his position that we should look at subjective intent as a material omission that misled the magistrate. And his claim fails on the second prong of plain error then and there. The fourth prong of plain error fails for the same reasons as the social costs that your honor mentioned. But when we're reviewing, he's admitted in his statement regarding oral argument that he's asked you whether, assuming that the questions that Judge Southwick has been addressing were the law in terms of invasion of privacy of matters that are completely unrelated to the basis of the search. The question still is the good faith exception and whether a reasonable officer would understood that what he was doing was not in violation of law. And these concerns that we have about privacy and the use of the cell phone are not so established that they would give the officer such doubt that would create an exception to the bad faith rule. I mean, it seems to me so whatever the concerns are about cell phones, it does not obviate the validity of the search here based on a reasonable officer's understanding of what was proper. That's right, your honor. And I see my time has expired. If I could briefly respond to that. I have a feeling that question was more for me than for you, but go ahead and give your response. No, I'll give mine later in conference. The government agrees. And for the same reasons that this cannot constitute plain error, it also cannot constitute, it also cannot establish that the search was objectively unreasonable. The law has stood as it stands today for decades. The officers acted in accordance with that law without established precedent to demonstrate that they were acting in an objectively unreasonable manner. The good faith exception applies and the district court's determination should be upheld. The government would respectfully ask that this court affirm. Thank you. Thanks, counsel. Mr. Beck, ready to concede or you got some response for us? I'm afraid I have a few things to say. I'm going to try to get to four points as quickly as I can. First, as the standard of review, simply point this court to page 264 of the record. I described it at length in my reply brief. It's under the heading why the good faith exception doesn't apply. It's the longest paragraph and it says because the officers misled the magistrate. Okay, as to subjective intent, the affiant here are the same officers who were misled by the magistrate. They intentionally misled the magistrate under every meaning of that word. They are trying to game the system in the same way that the Supreme Court warned against in Leon, in Herring, in Arizona versus Evans. Did they mislead the magistrate in any kind of way? Your Honor, this is not a Wren case. Wren deals with the exclusionary rule. Here, we're dealing with the good faith. The principle is the same though, is it not? I mean, the motive of the affair is irrelevant. We look to the face of the affidavit and the evidence supporting that, do we not? I disagree. I think you look at what the affiant knew. I know you disagree, but I mean, that's not enough. What do the cases say about that? The cases say you look at what the affiant knew when the affiant made the representations to the magistrate. Who says that now? What's that? What case says that? I mean, in other words, and more specifically, how do you reconcile it with the principle of Wren that the motive of the affair is not the issue? The way I reconcile it is this. You can lie to an offender. You can't lie to a judge. That's an important difference, and we don't exclude it even if you do, but we don't give you the benefit of the good faith exception. There are lies, and then there are lies, I guess. Well, if I could draw an analogy, I have a first grade son. If he came to me and said, I made an A on my math test. Can I have some sugar cereal today? And I say yes, only to later find out he failed every other one of his tests. Well, that omission would completely change the context of my decision in that case. In here, if the officer said, we want to search every aspect of the phone, including deleted items for text messages and for images, and we want to do so because we're worried about drugs that he had and we're worried about child pornography, that would indicate to the magistrate what the images were really being used for. It would call into question the credibility of the officer here if the officer had included that information. But they're still entitled to that information. I mean, they're entitled to the information that is set out in the affidavit supporting the warrant. They're entitled to that information, are they not? I mean, at least. They're only entitled to it if the affidavit has sufficient information such that the magistrate could make an independent assessment of probable cause. Well, there it is, right? Laid out in the affidavits. And that is, I mean, right now, for this moment, we're not attacking the sufficiency of the affidavit itself with respect to drugs. But assuming that it stated probable cause with respect to the drugs, then that's the end of the case. It's not the end of the case, and there's not probable cause for the drugs either. I'm sorry. Assuming that. Assuming there's probable cause for the drugs. It still doesn't get to the end of the case. I'm sorry, Your Honor. I spoke over you. That's okay. I mean, I spoke over you. That was only because of the technology, Your Honor. I'm sorry. It still doesn't get you to the images. There's not a single case based on just training and experience plus cell phones plus user quantity drugs that you get to get to everything in the phone. The government's making the argument that we didn't exceed the scope of the search warrant. You couldn't exceed the scope the search warrant. It includes a computerized deep dive of deleted material in the phone. Every aspect of this person's life was being subjected to review by the government because of user quantities of drugs. And I think that puts us in a frightening world, frankly. And for that reason, I asked this court to reverse. All right. Thanks to both of you. Counsel, you've helped us understand this case. We'll take this under advisement and get you an answer as